UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOWFIN YACHTS, INC.,

   Plaintiff,

v.   CASE NO. 8:15-cv-990-T-23TGW

BARKER BOATWORKS, LLC, et al.,

   Defendants.
_____/

**ORDER**

The plaintiff sues (Doc. 26) for "trade dress [infringement] and . . . trade secret misappropriation-related misconduct." (Doc. 30 at 2)  Including several pictures and diagrams, the complaint (Doc. 26) alleges that the plaintiff's "unique sheer line," which "[a]ll of the [plaintiff's boat] models share a substantial part of," constitutes a protected trade dress.  A sheer line is "the longitudinal line formed between the deck of a boat and the boat hull." (Doc. 29 at 8; Doc. 30 at 4)  The defendants move (Doc. 29) to dismiss the complaint for failure to state a claim.

**DISCUSSION**

The complaint (Doc. 26) claims "trade dress infringement under Section 43(a) of the Lanham Act" (Count I), "false designation of origin under Section 43(a)" (Count II), "common law unfair competition" (Count III), and "common law trade dress infringement" (Count IV).  Also, the complaint claims a "violation of Florida's

Trade Secret Act against Kevin Barker" (Count V) and a "civil conspiracy to violate Florida's Trade Secret Act" (Count VI).

**1. Trade Dress Infringement (Count I)**

"Trade dress is defined as the total image of a product and may include features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques." *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1189 (11th Cir. 2002) (internal quotation marks omitted). Section 43(a) of the Lanham Act "creates a federal cause of action for trade dress infringement."[1] *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986). "In order to prevail on [a] claim for trade dress infringement . . . [a plaintiff] must prove" (1) that "the product design . . . has acquired secondary meaning"; (2) that "the features of the product design are primarily non-functional"; and (3) that "the product design of the two products is confusingly similar." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004).

---

[1] Section 43(a) states:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**A. Secondary Meaning**

"Secondary meaning is the connection in the consumer's mind between the [product design] and the product's producer." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003). "Relevant factors in determining whether a [product design] has taken on secondary meaning are":

> (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the user of the [product design] to promote a conscious connection in the public's mind between the [product design] and the user's product or business; and (4) the extent to which the public actually identifies the [product design] with the user's product or venture.

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 653 (11th Cir. 2007) (internal quotation marks omitted).

The defendants argue that the complaint "does not allege any facts that 'part of [the] sheer line' has acquired secondary meaning." (Doc. 29 at 4)  However, the complaint alleges that the plaintiff has "continuously" used the purported trade dress "[f]or nearly fifteen years" and that the plaintiff "has expended significant resources[] advertising and promoting . . . this unique trade dress":

> 11. SaltWater Sportsman™ magazine has included numerous articles over the years highlighting the Yellowfin boat designs, including numerous photographs depicting the Yellowfin Trade Dress.
>
> 12. Sport Fishing™ magazine has also included numerous articles over the years highlighting the Yellowfin boat designs, including numerous photographs depicting the Yellowfin Trade Dress.

(Doc. 26 at 5, 6)  Further, the complaint alleges the effects of the plaintiff's advertising and promoting:

- 3 -

> 13. Consumers, including sport fishermen and boating enthusiasts, have come to identify the distinctive features of the Yellowfin Trade Dress as identifying the manufacturer of the Yellowfin boats, to wit, Yellowfin.
>
> 14. The Yellowfin Trade Dress has become well known to the purchasing public as a distinctive indication of origin of Plaintiff's boats.

(Doc. 26 at 6) Although the plaintiff's proof of these allegations might finally fail, the plaintiff's allegations are, in resolving a motion to dismiss, assumed true. Thus, the complaint alleges facts facially sufficient to state a claim based on secondary meaning.

### B. Non-functional Feature

"[A] product feature is functional . . . if it is essential to the use or purpose of the [product] or if it affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 24 (2001) (internal quotation marks omitted). The defendants argue that "[b]oats of the type at issue generally provide a higher forward sheer line in order to function well in high wave conditions." (Doc. 29 at 7) Even if a "higher forward sheer line" is functional, no part of the complaint describes the purported trade dress as a "higher forward sheer line."

The complaint includes several pictures and diagrams that depict the plaintiff's sheer line. *See Someecards v. SnarkeCards, LLC*, 2014 WL 3866024, at *2 (W.D.N.C. Aug. 6, 2014) (Whitney, J.) ("At the pleadings stage, pictures of trade dress alone may provide the necessary description of trade dress." (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (Boggs, J.))); *Weber-Stephen Products LLC v. Sears Holding Corp.*, 2013 WL 5782433, at *4 (N.D. Ill.

Oct. 25, 2013) (Chang, J.) (holding that "photographs and . . . figures" satisfied the pleading requirements even though the complaint failed to "clarify exactly what it mean[t] by 'shroud riveted band design'").

The response to the motion to dismiss argues that the "curves" of the plaintiff's sheer line are an "ornamental and aesthetic feature of the Yellowfin line of boats." (Doc. 30 at 4, 7)  The complaint sufficiently alleges a non-functional feature of the plaintiff's sheer line.

### C. Confusingly Similar

*AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986), states:

> In determining whether a likelihood of confusion exists, the fact finder evaluates a number of [factors] including: the strength of the trade dress, the similarity of design, the similarity of the product, the similarity of retail outlets and purchasers, the similarity of advertising media used, the defendant's intent, and actual confusion.

"The extent to which two [trade dresses] are confusingly similar cannot be assessed without considering all seven factors to ensure that the determination is made in light of the totality of the circumstances." *Dippin' Dots*, 369 F.3d at 1207 (internal quotation marks omitted).

The complaint alleges that the "Yellowfin Trade Dress has become well known to the purchasing public as a distinctive indication of origin of Plaintiff's boats." (Doc. 26 at 6)  The complaint compares side-by-side two diagrams, one of the plaintiff's boat and one of the defendants' boat.  The diagrams, each of an "open fisherman-style boat" (Doc. 26 at 9, 14), portray substantially similar sheer lines. Further, the complaint alleges that Kevin Barker, the president of Barker Boatworks,

LLC, "began planning to start a competing company" "while he was still an employee of" the plaintiff. (Doc. 1 at 6)

The complaint alleges that the defendants advertise through websites and boat shows. However, rather than alleging that the plaintiff advertises through websites or boat shows, the complaint alleges only that the plaintiff advertises through magazine articles. Further, the complaint fails to allege actual confusion between the plaintiff's and the defendants' boats.[2] Neither of these factors — dis-similar advertising media and no actual confusion — favors a finding of confusion. Also, neither the complaint nor the motion to dismiss addresses the remaining factor — "the similarity of retail outlets and purchasers." On balance, the complaint sufficiently alleges a claim based on a likelihood of consumer confusion.

---

[2] However, the complaint alleges:

> 44. Consumers seeing Defendants' infringing trade dress are likely to be misled into an initial interest in Defendants' products based on a false belief that Defendants are affiliated with or authorized by Plaintiffs. Such initial confusion works a significant trademark injury by luring in customers and depriving Plaintiff of sales.

> 45. The public is also likely to be misled by post sale confusion. Because of the clear and prominent imitation of the Plaintiff's trade dress, Defendants' infringing boats create post sale confusion in the minds of third parties who later encounter the products. The public will therefore be confused and will attribute to Plaintiff's boats and trade dress, defects in quality and workmanship that it finds in Defendants' products.

(Doc. 26 at 15)

## 2. False Designation of Origin (Count II), Common Law Unfair Competition (Count III), and Common Law Trade Dress Infringement (Count IV)

The defendants' motion to dismiss argues that, because each of Counts II, III, and IV is "predicated on the existence and infringement of protectable trade dress," the plaintiff's "failure to state a claim for trade dress infringement is fatal" to these counts. (Doc. 29 at 8) Because the complaint states a claim for trade dress infringement, the defendant's argument to dismiss Counts II, III, and IV fails.

## 3. Trade Secrets (Counts V and VI)

To plead a claim under Florida's Uniform Trade Secret Act, "a plaintiff must aver that: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret [the plaintiff] possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (Gold, J.). Also, "to qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others." *Del Monte Fresh Produce Co.*, 136 F. Supp. 2d at 1291 (citing *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)).

A review of the complaint confirms that the plaintiff pleads facts sufficient to state a claim for a "violation of Florida's Trade Secret Act against Kevin Barker" (Count V) and for "civil conspiracy to violate Florida's Trade Secret Act" (Count VI). As the plaintiff summarizes, the complaint alleges "misappropriation of

trade secrets based on at least two categories of information that Defendant Barker took from [the plaintiff] when he left the business to start his competing company: detailed contact information for [the plaintiff's] customers [the Customer Information] and detailed information about [the plaintiff's] sources and the costs associated with the manufacturing of its boats [the Source Information]." (Doc. 30 at 12)  Regarding the Customer Information, the complaint alleges that the plaintiff "collects and stores information about each customer" "within [the plaintiff's] networked computer system[,] which requires a username and password" and which is accessible to "[l]ess than 5% of the [plaintiff's] employees." (Doc. 26 at 7)  Regarding the Source Information, the complaint alleges that the plaintiff "does not share its Source Information with third parties nor does it allow others to have access to its Source Information." (Doc. 26 at 7)

The complaint alleges that, while "still an employee" of the plaintiff and while "conspir[ing]" with Barker Boatworks, Barker (1) "copied [the plaintiff's] Source Information for the purpose of using that information to start his company[,] Barker Boatworks[,]" and (2) "copied [the plaintiff's] Customer Information in order to have access to [the plaintiff's] customers to target them with Barker Boatworks' new business." (Doc. 26 at 8)  Further, the complaint alleges that Barker succeeded in "misappropriat[ing the plaintiff's] Trade Secrets by . . . taking and using [the plaintiff's] Customer Information . . . [and] Source Information . . . within the new competing business." (Doc. 26 at 19, 20)

## CONCLUSION

The defendant's motion (Doc. 29) to dismiss is **DENIED**.

ORDERED in Tampa, Florida, on November 4, 2015.

                                                  STEVEN D. MERRYDAY
                                          UNITED STATES DISTRICT JUDGE