IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOWFIN YACHTS, INC., a Florida
corporation,

        Plaintiff,

vs.

BARKER BOATWORKS, LLC, a Florida
limited liability company, and KEVIN
BARKER, an individual,

        Defendants.
_____/

CASE NO. 8:15-cv-00990-SDM-TGW

## PLAINTIFF'S RENEWED MOTION TO COMPEL REGARDING PLAINTIFF'S REQUEST TO INSPECT DEFENDANTS' COMPUTERS AND ELECTRONIC BASED DEVICES

Plaintiff, Yellowfin Yachts, Inc. ("Yellowfin"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 37(a), hereby files this Renewed Motion to Compel, and asks the Court to enter an Order requiring Defendants Barker Boatworks, LLC and Kevin Barker, (collectively "Defendants") to comply with Yellowfin's Request Nos. 28 and 7 set forth in Yellowfin's First and Second Requests for Production of Documents (respectively) and to overrule Defendants' objections, and in support states as follows.

### I.    PRELIMINARY STATEMENT.

During the deposition of the corporate representative of Defendant Barker Boatworks, LLC, Mr. Barker admitted to copying not only the Plaintiff's electronic files that resided on his Yellowfin laptop when he was employed by Yellowfin, but also to copying Yellowfin electronic files that resided on the company's network server. He also explained that that he copied these files onto a thumb drive, and subsequently copied those files onto the desktop computer that he

1

later purchased after starting his company, Defendant Barker Boatworks, LLC. Mr. Barker also explained that while he took these files, he testified that he did not use the files, but only purportedly copied them onto a file directory or folder he titled "Barker" on his company's desktop computer (this testimony contradicts representations made to the Court during the May 9, 2016 hearing). He also testified that he does not know the whereabouts of his personal laptop computer that he used for Yellowfin business during the time of his employment by Yellowfin nor the thumb drive that he says he used to make the copies of the Yellowfin electronic files. He does not know what happened to either of these devices.

Meanwhile, through the attorneys for the parties, Plaintiff has been engaged in an ongoing dialog with Defendants since the May 9, 2016, hearing on the original motion to compel in order to (1) obtain *all* of the files that Defendants told this Court it was reviewing at the time of the hearing, (2) determine that all the files that Mr. Barker took have actually been produced, and (3) confirm which of the documents that *have been* produced correspond to which of the files identified in the Appendix to the previously filed "Report of Sylint" (filed under seal, *see* D.E. 54 Plaintiff's notice of filing of same). However, after waiting over three weeks for information that would allow Plaintiff to verify the foregoing, Plaintiff has yet to receive such information and is faced with a discovery cutoff date of July 18. The computer forensic experts from Sylint have done an analysis comparing the files that Defendants produced after the May 9 hearing (through May 20, 2016) to those found on the Yellowfin laptop computer formerly used by Mr. Barker and they conclude that the files produced by Defendants (which counsel for Defendants at one point represented as including all files save for an email file) do not correspond with the 544 electronic files accessed by Defendant on May 22, 2014, save for three (3) electronic files.

Finally, there is additional evidence that implies that Defendant not only copied these

electronic files, but that he *accessed and used* the information contained in them in order to make a financial demand from the Plaintiff. Given all the circumstances, Plaintiff respectfully requests that the Court grant its motion and allow its computer expert to review the electronic files that Mr. Barker testified he copied onto his desktop computer and any other location where such files were copied.[1]

## II. PROCEDURAL HISTORY.

As the Court may recall, Plaintiff filed its original motion to compel on April 1, 2016 regarding its requests to inspect Defendants' computers and electronic based devices based on two requests for production propounded on Defendants in 2015 ("Plaintiff's Original Motion to Compel" D.E. 47). A hearing on Plaintiff's First Motion to Compel was held on May 9, 2016. Plaintiff's Original Motion to Compel was denied without prejudice, and the Court invited Plaintiff to renew its motion should the circumstances warrant it (D.E. 60). This renewed motion follows as a result of events that have occurred since the hearing which Plaintiff submits gives good cause to revisit the issues raised in the original motion to compel and which warrant an inspection of Defendants' computers under specific guidelines and conditions.

## III. RELEVANT FACTS.

The basis for the original motion to compel (D.E. 47) concerns two requests made by Plaintiff to inspect the computer and electronic devices in Defendants' possession for documents related to Plaintiff's business. In particular, Plaintiff requested to inspect Defendants computers and electronic based devices "that store electronic information *related to Plaintiff*." Defendants objected, explaining to the Court that the requests were overreaching. The following provides a

---

[1] Counsel for Defendants has indicated that a mirror image of the files kept on Defendants' computer was also made several months ago.

summary of the requests at issue and the Defendants' responses:

### A. Plaintiff's First Request for Production of Documents and Things.

On August 11, 2015, Plaintiff served its First Request for Production of Documents ("First Requests") on Defendants Kevin Barker ("K. Barker" or "Defendant") and Barker Boatworks, LLC ("Barker Boatworks" or "Defendant") (collectively "Defendants"). A copy of the First Requests is attached to Plaintiff's original motion as Exhibit "A." Among Plaintiff's First Requests, is Request No. 28, in which Plaintiff requested to inspect Defendants' computers and electronic based devices. The specific Request states:

> **REQUEST NO. 28. Inspection of all computers and other electronic based devices that store electronic information *related to Plaintiff*.**

*See* Exhibit A (D.E. 47)(emphasis added). On September 24, 2015, Defendants served their written objections and responses (without producing any documents at the time), on Plaintiff's counsel ("Defendants' First Responses"). A copy of Defendants' Responses is attached to Plaintiff's original motion as Exhibit "B." Defendants objected and responded to Request No. 28 as follows:

> Defendants incorporate the General Objections recited above as if set forth fully herein. Defendants further objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, work product immunity, or any other applicable privilege or protection from disclosure. Defendants further object to this Request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, as this Request is simply a fishing expedition.

*See* Exhibit B (D.E. 47).

### B. Plaintiff's Second Request for Production of Documents and Things.

On November 6, 2015, after Plaintiff had served its First Amended Complaint, Plaintiff then served its Second Request for Production of Documents ("Second Requests") on Defendants K. Barker and Barker Boatworks. A copy of the Second Requests is attached to Plaintiff's original

4

motion as Exhibit "C" (D.E. 47). Among the Second Requests, is Request No. 7, in which Plaintiff requested to inspect Defendants' computers and electronic based devices, including cell phones. The specific Request states:

> **REQUEST NO. 7: Provide for inspection all computers, whether desktop, laptop, tablet or hand-held in nature, and all mobile / cellular phone devices in your possession used during the planning and launch of Barker Boatworks, LLC, and any predecessor entity.**

*See* Exhibit C (D.E. 47). On December 10, 2015, Defendants served their written objections and responses (without producing any documents at the time), on Plaintiff's counsel ("Defendants' Second Responses"). A copy of Defendants' Second Responses is attached to the original motion as Exhibit "D." Defendants objected and responded to Request No. 7 as follows:

> Defendants incorporate the General Objections recited above as if set forth fully herein. Defendants incorporate the General Objections recited above as if set forth fully herein [sic]. Defendants further object as the discovery request is not proportional to the needs of this case since you are essentially requesting access to every document Barker Boatworks has created or has access to, regardless of its relevance to the litigation.

After a substantive meet and confer failed in resolving the objections, Plaintiff filed its Original Motion to Compel (D.E. 47).

**C. Defendants Have Failed to Provide the Information Promised at the May 9, 2016 Hearing.**

The Court ordered the parties to appear at a hearing scheduled for May 9, 2016. At the hearing, counsel for Defendants represented that an inspection of Defendants' computers was not necessary because Defendants had begun to turn over all documents that Plaintiff alleged were trade secrets as well as all the documents that were listed in the Appendix to the expert report of the Sylint Group, a computer forensic expert engaged by the Plaintiff, which revealed hundreds of documents that had been impermissibly accessed by Mr. Barker on May 22, 2014, the day that Mr.

5

Barker resigned from Plaintiff Yellowfin. To date, Plaintiff and its forensic computer expert have not been able to verify that Defendants have produced the documents Defendants represented to the Court were being produced. *See* Expert Report of John E. Jorgensen of the Sylint Group, attached hereto as Exhibit "F". Mr. Jorgensen explains that an electronic comparison of the files produced by Defendants to the files on the Yellowfin laptop show that only three (3) files were identical:

> Based on an analysis of the unique HASH values, only three files accessed by the defendant on 5/22/2104 were produced by the defendant.

Exhibit F (Sylint Report dated July 1, 2016). The comparison was done based on electronic documents that Defendants produced through May 20, 2016. Counsel for Defendants had represented that save for an email that had been sent by Mr. Barker while at Yellowfin to his wife's email account, the documents produced through May 20, 2016 were inclusive of all the documents on the Yellowfin laptop used by Mr. Barker.

On June 28, 2016, Plaintiff conducted the deposition of the corporate representative of Defendant Barker Boatworks, LLC under Fed. R. Civ. P. 30(b)(6) as well as Defendant Kevin Barker.[2] Mr. Barker was designated as the corporate representative of the company.[3] During his deposition, Mr. Barker admitted to copying the files from the Yellowfin laptop as well as electronic files from Yellowfin's network Server. Mr. Barker also testified that he did so using a thumb drive, i.e., an external electronic storage device that he connected to the laptop to downloaded the files. Mr. Barker also testified that he later copied these files onto his desktop computer that he

---

[2] Plaintiff will supplement this Renewed Motion with the appropriate excerpts of the Deposition of the Defendants reflecting the testimony concerning the information taken from Yellowfin. At the deposition, Plaintiff reserved the right to recall Mr. Barker upon receipt of all of Defendants' responsive documents to Plaintiff's discovery requests.

6

purchased for his company Barker Boatworks. Mr. Barker explained that the files were all copied onto a directory on his computer with the name "Barker," meaning that all of the files that Mr. Barker copied were neatly kept in one place on his computer, requiring almost no thought in looking for documents requested by Plaintiff in its requests for production of documents and interrogatories. Yet, on August 11, 2015, when asked *directly* in interrogatory no. 11, what information Mr. Barker had retained from Yellowfin, Mr. Barker omitted reference to these documents that he kept on his computer:

> **INTERROGATORY NO. 10: Identify all information that you retained upon your departure from Plaintiff.**
>
> Response:
>
> Defendant incorporates the General Objections recited above as if set forth fully herein. Defendant further objects to this Interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory is impossible to answer with any reasonable degree of accuracy. Defendant retained knowledge of Yellowfin boats, competitive boats, vendors, customers, costs, prices, personal information of Yellowfin employees, and other things learned over a lifetime of boating, fishing, and at Yellowfin, none of which is subject to a non-disclosure agreement.

A copy of the Interrogatory Responses is attached hereto as Exhibit G. Clearly, the Yellowfin documents that Mr. Barker admits to copying over to his Barker Boatworks' computer would be responsive to interrogatory no. 10, and yet Mr. Barker failed to reference this information. Again, on August 11, 2015, Plaintiff requested similar information from Mr. Barker and Barker Boatworks, LLC in its First Requests for Production of Documents and Things:

> **9. All documents that refer or relate to goods or services sold or offered for sale *by Plaintiff*.**
>
> **RESPONSE:**
> Defendants incorporate the General Objections recited above as if set forth fully herein. Defendants further objects as the Request seeks disclosure of potentially confidential information. Subject to these

> objections and once a confidentiality agreement has been entered into by both parties, Defendants will make a reasonable search of its sales records and will produce non-privileged sales summaries at a mutually-agreeable time and place.

*See* Exhibit B to Plaintiff Original Motion (D.E. 47). The documents that Mr. Barker took from Yellowfin and saved onto his Barker Boatworks' computer directly relate to Plaintiff's request no. 9, and yet, almost a year later, Plaintiff cannot verify that the documents have been provided to Plaintiff.

Mr. Barker's testimony also belies Defendants' earlier filed memorandum in opposition to Plaintiff's original motion to compel. Plaintiff's had proposed to Defendants prior to the filing of the original motion to compel to limit any potential inspection of Defendants computers to certain key words that identify "PLAINTIFF" i.e., Yellowfin, in search of documents that Defendants took from Plaintiff. Because Defendants were concerned with the possibility of the disclosure of attorney/client communications, Plaintiff suggested that the Court could conduct an *in camera* review prior to disclosure to Plaintiff, to which Defendants argued would involve hundreds of hours of review, wasting court resources:

> "This of course, would require the Court to fully understand all issues, spend hundreds of hours reviewing electronic documents without the benefit of understanding the significance of the materials, and making a document by document determination of what is discoverable and what is not. This procedure would not provide any safe guards against privileged documents. Such a review apparently, in Plaintiff's view, is also up to the Court. Plaintiff should be aware it is not the Court's responsibility to reasonably tailor discovery requests—it is the party seeking discovery."

Defendants' memorandum in opposition, p. 2 (D.E. 49). However, now that Mr. Barker has testified that all of the documents that he took from Yellowfin reside under a single directory on his Barker Boatworks' computer and that he has never accessed or used those files, Defendants' earlier argument regarding the Court having to expend "hundreds of hours reviewing electronic

8

documents" rings hollow. Had Defendants been forthright about how Mr. Barker kept these Yellowfin documents, Plaintiff could have obtained the necessary information without the need of Court intervention.

During the May 9, 2016 hearing, counsel for Defendants represented to the Court that given that Plaintiff had "finally" identified the trade secret information that Plaintiff was seeking in its requests, Defendants were now in a position to provide Plaintiff such information based on the names of the files listed in the Appendix to the first Sylint Report. This argument is reproduced below. This argument, in light of Mr. Barker's testimony, also rings hollow. Mr. Barker's testimony about copying Yellowfin files and then copying those same files onto his desktop computer would have made a search virtually perfunctory. Yet, Plaintiff is still awaiting confirmation that all the files he copied over to his desktop have been produced.

Based on Defense Counsel's representation that all documents identified on the subject appendix would be turned over, this Court denied Plaintiff's First Motion to Compel without prejudice. This second motion follows because, among other things, as of the date of this motion, all documents have not been turned over the undersigned.

### IV. ARGUMENT

Discovery under the Federal Rules of Civil Procedure seeks the disclosure of relevant information and the discovery rules are accorded broad and liberal treatment. *See Henderson v. Holiday CVS, L.L.C*., 269 F.R.D. 682, 685-86 (S.D. Fla. 2010); *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc*., No. 6:14-cv-749-Orl-41TBS, 2015 U.S. Dist. LEXIS 43251, *6 (M.D. Fla., Mar. 30, 2015). The failure to provide even marginally adequate responses impedes the ability of the parties and the Court to achieve a resolution of this lawsuit and should not be countenanced. Rule 26 of the Federal Rules of Civil Procedure is broad and permits parties to "obtain discovery regarding

any matter, not privileged, that is relevant to the claim or defense of any party[.]" Fed. R. Civ. P. 26(b); *see also Henderson*, 269 F.R.D. at 685 (stating that under Rule 26, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case."). Moreover, discovery need not be limited to the issues raised in the pleadings since "discovery itself is designed to help define and clarify the issues." *Id.*, citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Accordingly, "information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Id.*, citing *Dunbar v. United States*, 502 F.2d 506 (5th Cir. 1974). Rule 37(a)(3)(B) enforces this obligation by providing that if the non-discovering party does not comply with Rule 26, the discovering party "may move for an order compelling an answer[.]" Fed. R. Civ. P. 37(a)(3)(B). Rule 37(a)(5) further provides that the non-discovering party may be ordered to pay the moving party's reasonable costs and expenses incurred in making a motion to compel, including attorney's fees. *See*, Fed. R. Civ. P. 37(a)(5).

### A. The Court Permitted Defendants an Opportunity To Turn Over All Documents In Order to Avoid a Computer Inspection.

At the May 9, 2016 hearing, counsel for Defendants specifically explained that Defendants would turn over all required documents and so a computer inspection was not warranted. The following exchange is particularly relevant as it formed the basis for this Court's denial without prejudice of Plaintiff's First Motion. Specifically, counsel for Defendants stated as follows:

> MR. HANKINS: Your Honor, I would say that we are
> turning over those documents already and if there's any
> document that's not turned over when we are able to complete
> this process through the normal means, I would say then
> there would be -- that's where this issue should come up.
> At the current time, we're in the process of turning over any

documents that they have identified -- that they've now identified as –

THE COURT: In the report?

MR. HANKINS: In their report, yes.

THE COURT: You've given them all those things?
MR. HANKINS: We have not yet, because I haven't gone through all –

THE COURT: All right.

MR. HANKINS: -- 500 documents, but I've gone through at least 350 in the last week.

THE COURT: Okay.

MR. HANKINS: I mean, that's the -- all we're asking is they use the normal tools afforded them through discovery and not be so invasive into our client's -- so much as to go into -- I mean, these requests were to inspect their computer. That's what the requests were.

(…)

THE COURT: Here's the way this thing started playing out: They complained about your boilerplate objections. You complained about their failure to be specific in what their search was. So in theory, I could have said, okay, I'm denying this motion, you-all start over. But it seems to me to come here and talk about it and see where we go is better. Now, I can still go back to square one if you want to and make them narrow it and make you stop doing boilerplate objections, because that doesn't help either. So that's -- as I'm reading it, that's what I'm getting out of it.

So at this point, I'm willing to consider that you're now turning over the materials that he had downloaded on his computer the day before. Is that what you're doing?

MR. HANKINS: Yeah, we are -- to be specific, we're turning over any documents that have been identified by -- in the expert report and I believe that date would be

11

May 22nd, the day before he left Yellowfin.

THE COURT: Yeah, that's what they say.

MR. HANKINS: Yeah.

THE COURT: And that in particular raises a big red flag that he was doing something so that I would have based the search on that. On the other hand, if you're turning over all that stuff, although redacting anything that's privileged and keeping a privilege log, that's a different story.

MR. HANKINS: And that's -- that is the case, Your Honor. We didn't have the -- what they were claiming were trade secrets had not been identified until documents were turned over on April 21st. We didn't know what documents they were specifically claiming were trade secrets. And we're willing to turn over those documents, but that -- even though that wasn't necessarily this request that they're basing this motion on, with the expert report that they've now identified the documents that they're talking about, we're willing to -- we are searching our client's computer for the documents and turning them over as they're found.

(…)

(Hrg. Tr., at 13-15).

Based on Defense Counsel's representation that Defendants would turn over the required documents requested in Plaintiff's Request No. 28 of its First Request for Production of Documents and No. 7 of its Second Request for production of Documents and in essence the list of documents listed on appendix to The Sylint Report dated April 25, 2016, this Court ruled it would give the Defendants an opportunity to turn over the documents before any computer inspection would be permitted. Specifically, the Court stated:

THE COURT: Well, that may be so, but guess what? In most cases, that's all we got, is that they say I've given everything I have. **So my inclination is, and you can address this, is to let them finish producing and then you can see what you got and if you think there's a basis for**

> **examining their computer because they haven't given you what
> he had taken, then come back with that information and a
> more specific request with respect to the computers and the
> searches.** That's sort of my -- because, yeah, the Eleventh
> Circuit case doesn't say by any means you can't check on
> computers. But on the other hand, the stuff that I've seen
> suggests, yeah, you ought to be sort of cautious before you
> start letting people roam through other people's computers,
> especially a competitor. So that's where I'm at at this point.
> I'm not sure that the matter's played out yet to the point where
> that's necessary.

(Hrg. Tr., at p. 20-21).

As set forth below, Plaintiff submits that it is now necessary to proceed to the next step which is a supervised computer inspection.

### B. Defendants Have Failed to Turn Over All Required Documents.

After the hearing, on or about May 20, 2016, counsel for Defendants did turn over some documents. Specifically, counsel for Defendants produced documents bates labeled BARKER 004269-BARKER 006254. Once the undersigned received these documents, undersigned wrote to Defense Counsel to ask for confirmation that this was the totality of the documents produced by Defendants related to the representations made in Court at the May 9, 2016 hearing and if not, to let undersigned know when additional production would be forthcoming. On or about May 31, 2016, following a telephone conversation in which this and other issues relating to discovery was discussed, Defense Counsel sent an email to undersigned counsel stating that the foregoing electronic documents is the "final set of documents that are being produced as agreed before the Court in the motion to compel hearing (save a lone document emailed to sarahandkevinb@gmail.com, which we are obtaining)." Accordingly, undersigned counsel asked The Sylint Group to conduct the necessary verification to ensure that the documents produced by Defendants on May 20, 2016 matched the files that The Sylint Group reported were accessed by

Defendant Kevin Barker on the laptop he had used while employed by Plaintiff. On or about June 3, 2016, undersigned counsel explained in an email to Defense Counsel that according to The Sylint Group, an electronic comparison of the files indicates that the production of the documents is in fact not complete as to the files accessed and that many of the produced files do not produce an electronic match with the files from Yellowfin's computer. In fact, there was such an important discrepancy, that undersigned counsel was forced to postpone the deposition of Kevin Barker to a later date.

On or about June 8, 2016, after not hearing back from Defense Counsel on the issue of the document production, undersigned counsel sent another email to Defense Counsel seeking confirmation whether all documents had been produced. On that same day, Defense Counsel indicated that they could not make a final determination as to whether all documents had been produced because the exhibit to The Sylint Group report was not clear and the scanned pages were difficult to read. This was an odd response given that Defendants represented to this Court at the hearing that they were in the process of producing all documents identified on the exhibit to The Sylint Group April 25, 2016 report. Moreover, how could Defendants, through their counsel, confirm in the email dated May 31, 2016, that all documents had been produced if in the subsequent email dated June 8, 2016, the same exhibit was difficult to read? After receiving Defense Counsel's June 8, 2016 email, undersigned counsel sent another copy of the subject exhibit that was easier to read. To date, undersigned counsel has not received clear and certain confirmation, one way or another, whether the documents identified on the exhibit to The Sylint Group report have indeed been produced. Plaintiff's counsel also asked Defendant's counsel to produce a key or document that would allow Plaintiff to manually match which document of Defendants' May 20, 2016 production matched the specific file listed in the Appendix. Defendants

indicated that they would produce such a document, but none has been provided. More importantly, according to the second report prepared by The Sylint Group, it appears only a few documents match. *See* Sylint Report dated July 1, 2016, Exhibit F.

**C. A Computer Forensic Inspection is Warranted.**

At Defendants' Deposition, Mr. Barker testified that he did copy the documents but he never used the files. Specifically, he explained that upon advice of counsel he saved the information but never used it. He also testified that he could not locate the thumb drive that he used to copy the files. He also testified that he could not locate his personal laptop computer that he used while employed by Yellowfin. He does not know what happened to these devices, but that he did not copy the Yellowfin files onto any other device nor did he use the files.

There is circumstantial evidence that Mr. Barker did access and use the files, and because Defendant denies it, and is unable to locate the electronic devices that he had in his possession at the time he left Yellowfin, Yellowfin should be permitted to conduct an inspection of these files. Based on Mr. Barker's testimony, the files in the particular subdirectory where he saved the Yellowfin files was not accessed or used. Yet, Mr. Barker testified that the reason he took the Yellowfin files was to confirm commissions that he said he was owed by Yellowfin. Mr. Barker also testified that he later made a demand on Yellowfin for his allegedly unpaid commissions. If Mr. Barker took the Yellowfin files in order to verify his commissions and he subsequently made such a demand, then it stands to reason the Mr. Barker reviewed the information contained in the files he took to calculate (or at least verify) the amount he later demanded. Yellowfin should be able to verify whether the files were accessed and modified by having its computer forensic expert review these files.

Counsel for Defendants has indicated that the files on the Barker Boatworks' computer

were also subsequently "mirrored" to preserve the information. Plaintiff's forensic computer expert should be able to inspect the same files as kept in the mirrored image of the Barker Boatworks' computer in order to compare the information from both sources. The Sylint Group has indicated that a review of those files, if not altered, would provide information about the transfer of the files, access to the files and any modifications that may have been done to them.

Based on the foregoing, it seems clear that despite representations to the contrary, complete production of all subject documents has not been accomplished and given the discrepancies between Mr. Barker's sworn testimony and representations made to this Court, it appears that a computer inspection of Defendants' computers is the clear solution.

### D. An Inspection of Defendants' Computers Will Clear up the Discrepancies.

If this Court grants access to Defendants' computer which Mr. Barker testified that he copied the files onto, then an expert inspection can determine the source of the files accessed (i.e., whether the file came from a thumb drive, the cloud, etc.), determine when the files were copied onto the drive, determine if the files have been accessed and modified and possibly, even if new files were created using these materials. An inspection of the subject computers would be conducted under specific guidelines set by this Court.

### Certification of Meeting and Conferring with Counsel for Defendant Pursuant to Local Rule 3.01(g) and Fed. R. Civ. P. 37(a)(1)

Plaintiff's counsel certifies that they, in good faith, conferred with counsel for the Defendants in an effort to ensure that all required documents have been turned over. Unfortunately, as of the date of this Motion, Defendants have still not turned over all documents and counsel for Defendants has not provided the undersigned with a date certain when all documents would be turned over or whether they would be turned over. Moreover, Plaintiff has no information from Defendants that would allow Plaintiff to match the documents thus far

produced against the documents that Defendants represented were being produced based upon the Appendix to the Sylint report. Any further delay will prejudice Plaintiff given the current discovery cutoff of July 18, 2016.

## V.  CONCLUSION

Plaintiff requests that this Court permit it to inspect Defendants' desktop computer(s) and electronic devices that are still in Defendants' possession, with the following conditions:

a. Counsel for Plaintiff and Defendants agree on a defined set of search criteria that limit the search for Yellowfin documents and time frame to be covered by the inspection;

b. The inspection is conducted by Plaintiff's forensic computer expert in the presence of Defendants and/or Defendants' Counsel;

c. The inspection be limited to (a) computers that Kevin Barker used in connection with the launch of his business, i.e. computers that Kevin Barker testified he used to store information that he obtained from Yellowfin, (b) to the extent not covered in (a), above, computers located at Barker Boatworks or at the Barker residence that contain information relating to the Plaintiff, and (c) the mirror image information preserved by Defendants.

d. Counsel for the Plaintiff and Defendants agree on a mutually date, time and location to perform the inspection;

e. The computer forensic experts create "mirror image" copies of the information stored on the devices in order to conduct the search based on the predetermined search criteria, the purpose of which is to minimize the intrusion and disruption to Defendants' business;

f. That Defendants be required to file a declaration under oath with the Court that no other electronic device or computer contains information related to Plaintiff.

g. That Plaintiff be awarded its attorneys fees and costs for bringing this motion.

h. For such further relief as this Court deems just and proper.

Dated: July 6, 2016.                                  Respectfully submitted,

 

s/William R. Trueba, Jr.
William R. Trueba, Jr., Esq.
Florida Bar No. 117544
Wtrueba@etlaw.com
Jorge Espinosa, Esq.
Florida Bar No.779032
jespinosa@etlaw.com
ESPINOSA TRUEBA MARTINEZ, PL
1428 Brickell Ave., Suite 100
Miami, Florida 33131
Tel: (305) 854-0900
Fax: (855) 854-0900

and

John R. Squitero, Esq.
Florida Bar No.
JRS@katzbarron.com
2699 South Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: 305-856-2444
Fax: 305-285-9227

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 6, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  /s/ William R. Trueba, Jr.
                                                     William R. Trueba, Jr.

**SERVICE LIST**

*Yellowfin Yachts, Inc., v. Barker Boatworks, LLC, and Kevin Barker.*
Case No. 8:15-cv-00990-SDM-TGW
United States District Court, Middle District of Florida

William R. Trueba, Jr., Esq.
Florida Bar No. 117544
Wtrueba@etlaw.com
Jorge Espinosa, Esq.
Florida Bar No.779032
jespinosa@etlaw.com
ESPINOSA TRUEBA MARTINEZ, PL
1428 Brickell Ave., Suite 100
Miami, Florida 33131
Tel: (305) 854-0900
Fax: (855) 854-0900
*Counsel for Plaintiff*
**Via CM/ECF**

Brian R. Gilchrist, FL Bar #774065
bgilchrist@addmg.com
Brock A. Hankins, FL Bar #112531
bhankins@addmg.com
Allen, Dyer, Doppelt, Milbrath
& Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, FL 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343
*Counsel for Defendants*
**Via CM/ECF**

John R. Squitero, Esq.
Florida Bar No.
JRS@katzbarron.com
2699 South Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: 305-856-2444
Fax: 305-285-9227
*Counsel for Plaintiff*
**Via CM/ECF**